NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 16a0676n.06

No. 16-5163

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

FILED
Dec 15, 2016
DEBORAH S. HUNT, Clerk

| | |
|---|---|
| JOSH WHEELER, | ) |
| Plaintiff-Appellant, | ) |
| v. | ) ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF TENNESSEE |
| JACKSON NATIONAL LIFE INSURANCE COMPANY, | ) |
| Defendant-Appellee. | ) |

BEFORE:   DAUGHTREY, ROGERS, and COOK, Circuit Judges.

MARTHA CRAIG DAUGHTREY, Circuit Judge.   Plaintiff Josh Wheeler appeals the grant of summary judgment to defendant Jackson National Life Insurance Co. (Jackson), and the denial of summary judgment to Wheeler on claims under the Americans with Disabilities Act (ADA), 42 U.S.C. §§ 12101–12213; the Family Medical Leave Act (FMLA), 29 U.S.C. §§ 2601–2654; the Tennessee Public Protection Act, Tenn. Code Ann. § 50-1-304; the Tennessee Disability Act, Tenn. Code Ann. §§ 8-50-103 to –104; and Tennessee common law.  The district court granted summary judgment to Jackson on all claims.

Through its subsidiaries, Jackson markets and wholesales a variety of annuities to independent and regional broker-dealers, "wirehouses," independent agents, and financial institutions.  To do so, Jackson employs both External Wholesalers (EWs) and Internal Wholesalers (IWs).  EWs and IWs are paired; EWs meet face-to-face with customers, and IWs provide in-office support for the EWs, including scheduling meetings, closing sales, and helping

agents get the products they need. IWs, when not performing their support tasks, log into and answer customer service calls from a telephone "queue," to which callers are routed if the IW they hope to reach is unavailable. Because the calls must be monitored and recorded in compliance with the Financial Industry Regulatory Authority rules, employees may log into the queue only at Jackson's office. The more Jackson employees who are logged into the queue, the shorter the wait time for customers' calls to be answered.

Throughout his time at Jackson, Wheeler struggled with health impairments arising from his narcolepsy, bipolar disorder, anxiety, emotional deregulation, and depression. Jackson granted Wheeler a number of leaves both under the FMLA and, when his FMLA leave was exhausted, through paid or unpaid leaves of absence, as applicable under company policy. Wheeler was under instructions that, should he need to be away from the office, he was to call and notify Jackson of his absence.

Eventually, Jackson created the position of Floating Internal Wholesaler (Floating IW) for Wheeler as an accommodation for his medical conditions. The floating position was not paired with a specific EW; instead, the Floating IW was responsible for being logged into the queue in order to provide support to EWs in the event of an IW's absence. All of Wheeler's supervisors—and Wheeler himself—recognized that telephone duties were the central role of the Floating IW.

In June 2013, Wheeler's newly-appointed supervisor, Matt Cross, informed a human resources employee, Laural Gooden, that Wheeler had been absent from work during May and June without calling in and asked her to clarify how to handle those absences. A review of Wheeler's attendance and work records, conducted by human resources manager Donna Douglas, showed that between April 24, 2013, and July 12, 2013, Wheeler had not used his

identification badge to enter the building and had not logged into Jackson's telephone system as being present on 34 of those 58 working days. Their review also showed that even on the days when he was at work, Wheeler was not fulfilling his job requirements. After investigating Wheeler's absences, Douglas completed a "reconciliation" of Wheeler's time, opting to cover Wheeler's absences through July 5, 2013, with the 240 FMLA hours that had been available to Wheeler prior to May 2013, rather than fire him for absenteeism. Douglas also required Wheeler to apply for a general leave of absence in order to give Jackson time to follow up with his doctors regarding Wheeler's ability to fulfill the Floating IW job functions going forward, with or without accommodations.

The FMLA certifications and other information provided by Wheeler's doctors made clear that Wheeler could potentially require up to six days off for medical leave every other week due to his bipolar disorder and up to one day off per week for his narcolepsy, with no indication that these needs would abate in the future. Two doctors advised Jackson that Wheeler's conditions were either lifelong or of unknown duration and unpredictable. This prognosis marked more time away from work than the doctors previously had estimated would be necessary.

Based on this information, Jackson decided that a general leave of absence was not an appropriate accommodation for Wheeler's medical conditions; that Wheeler's medical conditions were life-long; that Wheeler would be unable to perform the essential functions of his job for lengthy periods of time; and that a leave of absence would not enable Wheeler to return to work and capably perform his job in a predictable and reasonable time. Jackson informed Wheeler that it was terminating his employment effective August 9, 2013.

No. 16-5163, *Wheeler v. Jackson National Life Insurance Co.*

Wheeler then filed this action against Jackson, alleging discrimination and retaliation based on disability, in violation of the ADA, interference with his rights under the FMLA, and claims under the parallel state disability act and state common law. The parties filed cross-motions for summary judgment—Jackson seeking dismissal of all claims and Wheeler seeking judgment in his favor. In a lengthy and detailed opinion, the district court ably articulated the applicable law and the reasons why summary judgment should be granted to Jackson in this case. *See Wheeler v. Jackson Nat'l Life Ins. Co.*, 159 F. Supp. 3d 828 (M.D. Tenn. 2016). We therefore find it unnecessary to engage in an additional full-blown statement of fact and analysis. Instead, we adopt the reasoning of the district court and its conclusions, with the following additional observations.

In the district court, Wheeler's FMLA interference claim appeared to hinge on his allegation that his FMLA leave had not been exhausted, because on most of the days that he was not in Jackson's office he was actually working from home and, further, that the company knew of and had approved such an arrangement. The parties did not dispute that Wheeler could access his emails remotely. However, Wheeler argued that he had been approved for "remote work" privileges as an accommodation for his disability by "high-level" Jackson management. Even so, Wheeler produced no evidence at all to show that he was approved for anything beyond remote email access, nor any specific evidence of work that was done during his days at home.

The district court dismissed Wheeler's FMLA interference claim, concluding that Wheeler had exhausted his FMLA leave and that "[he] was not performing the essential functions of the F[loating] IW positions . . . regardless of whether he claims to have been working from home." *Wheeler*, 159 F. Supp. 3d at 863. Given the paucity of Wheeler's evidence, the district court properly determined that a jury could not reasonably find that Jackson

unlawfully interfered with Wheeler's FMLA rights and appropriately granted summary judgment to Jackson on this claim.

On appeal, Wheeler continues to dispute that the Floating IW position required him to come into work regularly or that he was incapable of fulfilling his essential job functions. He also contends that the district court's focus on whether he was performing his "essential functions" at home—rather than working at all—is reversible error. He maintains that he was fired for discriminatory and retaliatory reasons, in violation of his rights under the ADA, and suggests that Jackson's explanations for requiring that he apply for a general leave of absence and for his termination were pretextual. But, Wheeler has failed to create a genuine dispute of material fact even as to whether he was working at all. He has offered no evidence to substantiate his claim that Jackson authorized him to work remotely, and he has provided no evidence of any work he did while at home—no work-related emails; no testimony from supervisors, IWs, or EWs that he assisted in any projects; and nothing he produced as the result of his purported efforts.

Finally, in its briefing on appeal, Jackson suggests that we adopt the honest-belief rule in the context of FMLA interference claims. Because Jackson prevails in this matter without recourse to any honest-belief-rule analysis, we need not discuss the merits of Jackson's suggestion.

Having had the benefit of oral argument, and having studied the record on appeal and the briefs of the parties, we are not persuaded that the district court erred in dismissing the complaint. Because the reasons why judgment should be entered for the defendant have been fully articulated by the district court, the issuance of a detailed opinion by this court would be duplicative and would serve no useful jurisprudential purpose. Accordingly, we AFFIRM the

No. 16-5163, *Wheeler v. Jackson National Life Insurance Co.*

judgment of the district court upon the reasoning set out by that court in its memorandum opinion filed on January 4, 2016, and found at 159 F. Supp. 3d 828.

## UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

Deborah S. Hunt
Clerk

100 EAST FIFTH STREET, ROOM 540
POTTER STEWART U.S. COURTHOUSE
CINCINNATI, OHIO 45202-3988

Tel. (513) 564-7000
www.ca6.uscourts.gov

Filed: December 15, 2016

Mr. Robert W. Horton
Ms. Mary Leigh Pirtle
Mr. Brian Christopher Winfrey

Re: Case No. 16-5163, *Josh Wheeler v. Jackson Natl Life Ins Co.*
Originating Case No. : 3:14-cv-00913

Dear Counsel,

The Court issued the enclosed Opinion today in this case.

Sincerely yours,

s/Beverly L. Harris
Case Manager
Direct Dial No. 513-564-7077

cc:  Mr. Keith Throckmorton

Enclosure

Mandate to issue